In re **COLORADO MOUNTAIN CELLARS, INC., Debtor.**

Gary C. **FLYNN, Appellant,**

v.

Clifford E. **ELEY, et al., Appellees.**

**Civ.A. No. 97–AP–474.**

United States District Court, D. Colorado.

Oct. 21, 1998.

Gary C. Flynn, Boulder, CO, for Plaintiff.

Cynthia T. Kennedy, Kennedy & Kennedy, P.C., Lafayette, CO, Douglas W. Jessop, Frederick Carter, Holden & Jessop, P.C., Denver, CO, for Defendant.

## OPINION AND ORDER

KANE, Jr., Senior Judge.

### I. Background

Gary Flynn is appealing the award of professional fees granted by the bankruptcy court. Mr. Flynn was one of two attorneys hired as special counsel by the trustee for Colorado Mountain Cellars (C.M.C.), Inc. C.M.C. filed bankruptcy in 1989 and its only assets were litigation claims. The attorneys were retained to pursue those claims in state court.

Mr. Finch was hired in 1990. He had a contingent fee agreement with the estate for 50 percent of the litigation proceeds plus expenses. Mr. Finch obtained verdicts in favor of the estate which apparently exceeded $300,000. There was, however, extensive post trial litigation. As a result, the estate hired Mr. Flynn in 1991 to assist Mr. Finch with this litigation. At that time the fee agreement was changed so that Mr. Finch received 40 percent of the litigation proceeds and Mr. Flynn received the remaining ten percent. This agreement was approved by the bankruptcy court.

Later, Mr. Finch was asked to withdraw as special counsel because he was needed as a fact witness in the state court litigation. At that point, Mr. Flynn took over as sole special counsel. The fee agreement was not

modified to reflect this change, however. In 1995, the state court case was finally settled for $73,000. This amount was sufficient to pay the 50 percent contingency fee to the attorneys and to satisfy all the unsecured creditors.

Mr. Flynn submitted his application for payment of professional fees under 11 U.S.C. § 330 in December, 1996. His application requested payment of 40 percent of the litigation proceeds and requested that Mr. Finch receive nothing. Mr. Finch then objected to Mr. Flynn's application. Mr. Finch also submitted his fee request for 40 percent of the ligation proceeds. The two requests were consolidated and set for a telephonic hearing on February 20, 1997. At the conclusion of the hearing, the bankruptcy judge denied Mr. Flynn's request for a fee of 40 percent of the litigation proceeds. Instead, Mr. Flynn was awarded the originally agreed upon amount of ten percent. Mr. Finch's request for a fee of 40 percent of the litigation proceeds was approved.

Mr. Flynn then appealed that decision to this Court. His appeal was dismissed for lack of standing. The U.S. Court of Appeals for the Tenth Circuit agreed that Mr. Flynn lacked standing to challenge Mr. Finch's fee award. However, the Court of Appeals held that Mr. Flynn's request for an enhanced fee was separate from the issue of Mr. Finch's fee. Therefore, it is now necessary to consider whether Mr. Flynn was denied due process and whether the bankruptcy court abused its discretion when it determined Mr. Flynn's fee.

## II. Due Process Claim

The award of Mr. Flynn's professional fee was decided in a telephonic hearing held on February 20, 1997. Mr. Flynn claims he was denied due process because the hearing lasted longer than specified in the notice and because he was not given an evidentiary hearing. The notice given by the bankruptcy court stated that if the hearing exceeded fifteen minutes or it was necessary to receive evidence, the telephonic hearing would be used as a scheduling conference and the hearing would be reset.

Mr. Flynn's primary objection is that he was denied due process because he was not given an evidentiary hearing. He states that this was a contested matter and that, as a result, he was entitled to an evidentiary hearing under Fed.R.Bankr.P. 9014. Because Mr. Finch opposed Mr. Flynn's fee application, this was certainly a "contested matter." However, it does not follow that a contested matter mandates an evidentiary hearing. Rather, the requirement is that "reasonable notice and *opportunity* for hearing shall be afforded to the party against whom relief is sought." Fed.R.Bankr.P. 9014 (emphasis added). Therefore, a hearing is not required under the rule. "The words 'after notice and hearing' denote notice and an opportunity for a hearing as appropriate in the particular circumstances, but a hearing—much less an evidentiary hearing—is not required in every instance." *Prebor v. Collins (In re I Don't Trust)*, 143 F.3d 1, 3 (1st Cir.1998). Thus, where a judge is familiar with the facts in dispute, a hearing may not be necessary to determine the proper fees. *Cramer, MAI, SRPA, Inc. v. United States*, 47 F.3d 379, 383 (10th Cir.1995). In this case, the hearing transcript shows that the judge was familiar with the facts at issue and therefore he did not abuse his discretion by holding a non evidentiary hearing.

It may have been different had Mr. Flynn actually requested the bankruptcy court give him an evidentiary hearing. "Motions for which opposition has been filed and so stated on the Certificate shall be set for hearing." D.Colo.L.B.R. 202(f). The certificate to which this rule refers is the Certificate of Contested Matter. D.Colo.L.B.R. 202(d). Mr. Flynn was required to file this certificate after opposition to his request had been received. *Id.* The form provides for the option of requesting an evidentiary hearing. D.Colo.L.B.F. 202.2. However, Mr. Flynn did not file the required certificate, and thus no advance request for an evidentiary hearing was made. Simply put, Mr. Flynn could have had an evidentiary hearing had he requested one by following the procedure set out in the rules.

Nor did Mr. Flynn request an evidentiary hearing during the February 20, 1997 pro-

ceeding. Mr. Flynn states that there was a need to present evidence with regard to the "hotly contested" issues being discussed. However, Mr. Flynn never raised an objection on that point during the hearing. That in itself is a problem because he is not entitled to raise this issue on appeal without raising the proper objection with the bankruptcy court. Furthermore, there is no indication of any disputed facts which would require an evidentiary hearing now. The so-called "hotly contested" issues involved Mr. Finch's alleged conflicts with the estate. The Court of Appeals has already held that Mr. Flynn has no standing to challenge Mr. Finch's fee, and thus those issues are not relevant.[1]

■ Mr. Flynn's second claim is that he was denied due process because the hearing exceeded the 15 minute limit set in the notice. The record shows the hearing lasted 70 minutes. This alone, however, does not force the conclusion that Mr. Flynn was denied due process. While it is desirable that the bankruptcy court observe the time limit in its notice, so long as the hearing did not exceed its stated scope there is no harm to Mr. Flynn. Indeed, the record shows that the hearing ran as long as it did primarily to give Mr. Flynn the opportunity to state why the bankruptcy court should deny Mr. Finch's fee application. Furthermore, Mr. Flynn did not object when the hearing went beyond 15 minutes. Under these circumstances, there was no prejudice to Mr. Flynn as a result of the longer hearing and therefore no violation of due process.

### III.  Abuse of Discretion

■ Mr. Flynn's next argument on appeal is that the bankruptcy court's denial of his fee request was actually a denial of a request for an enhanced fee. He contends that the denial of this request was "clearly erroneous." However, the standard of review for

awards of attorney fees, including enhancement, is abuse of discretion. *Smith v. Freeman*, 921 F.2d 1120 (10th Cir.1990). Under the circumstances, it is impossible to determine if the bankruptcy court abused its discretion because the issue of enhanced fees was not directly addressed in its order.

It is important to note exactly what Mr. Flynn's request sought. Mr. Flynn's application was for 40 percent of the litigation proceeds plus expenses. He supported this request with substantial documentation of the time and expenses incurred in pursuing the litigation. He stated that the estate recovered $73,000 from the settlement and that under the original contingent fee agreement this was sufficient to fully pay all the unsecured creditors.

His application further stated that Mr. Finch was not entitled to any fee. Thus, assuming Mr. Finch wasn't paid, Mr. Flynn's forty percent fee would be *"less than* the previously approved overall 50% contingency fee plus costs approved for both special litigation counsel." (R. Vol. 1, Tab 99, Item 22.) (emphasis in original.) He further states that this award "insures that more funds will be available ... to pay all unsecured creditors 100% of their claims...." (R. Vol. 1, Tab 99, Item 23.)

These statements create an ambiguity in Mr. Flynn's fee application. Under one reading, he was not asking the court to exceed the 50 percent contingent fee agreement that the estate had with the two attorneys. Instead, he was asking the court to reallocate the 50 percent fee between Mr. Finch and Mr. Flynn. This was the reading given by the bankruptcy court. "The other part of the question revolves around whether I should now re-do those orders and deprive Mr. Finch of any compensation and instead award Mr. Flynn a 40 percent contingent fee. And I see no reason to do that." (R. Vol. 5, page 33.)

---

1. The only other factual issue raised by Mr. Flynn was a comment by the bankruptcy judge that Mr. Flynn was "arguably" a volunteer counsel for the estate. This comment came from discussion that Mr. Flynn's scope of employment was to pursue claims in state court and thus the adversary proceeding he filed with the bankruptcy court may have been outside the scope of his employment. This simply requires the court to interpret the order approving employment to determine if the adversary proceeding is within the scope of employment. Whether the adversary proceeding was a logical next step in pursuing the litigation would be a factual issue for an application to expand the scope of employment, but is not important here.

An alternative interpretation was that Mr. Flynn made an enhanced fee request independent of Mr. Finch's payment. Using that approach, Mr. Flynn's attack on Mr. Finch's fee may be seen as an effort to enhance his own fee application. After all, a significant part of Mr. Flynn's claim is that the litigation proceeds were enough to pay all the unsecured creditors. However, if both Mr. Finch and Mr. Flynn were each paid a 40 percent contingent fee, the professional fees would take the entire amount of the recovery, leaving nothing for the estate.[2] Thus, if Mr. Finch were denied payment, Mr. Flynn could receive an enhanced fee and the unsecured creditors would still get paid.. Since Mr. Flynn did not specifically limit his request so that the 50 percent contingent fee would not be exceeded, his application can be seen as independent of Mr. Finch's fee award. This is the view suggested by the Court of Appeals.

■ Although the bankruptcy court did address the issue of changing the contingent fee agreement as between the two attorneys, there is no indication that it considered the separate issue of the enhanced fee. If the bankruptcy court made a determination on the enhanced fee issue, it failed to provide the "clear and concise" explanation required. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Without that explanation, there is no way to determine what was considered in making the fee award. For that reason, this issue must be addressed by the bankruptcy court.

The trustee approved Mr. Flynn's original fee application and did not contest Mr. Flynn in this appeal. However, if Mr. Flynn's enhanced fee request were approved, it would eliminate funds to pay creditors. Those creditors should have the opportunity to protest the fee application. Therefore a new notice of fee application clearly stating that the fee is sought from the estate (and not from Mr. Finch's fee) is needed. The bankruptcy court may then decide what kind of

hearing, if any, is necessary to make a determination on Mr. Flynn's application.

Therefore, this case is remanded to the bankruptcy court for further action consistent with this opinion.

---

2. The following figures illustrate the dilemma for Mr. Flynn. Mr. Finch's approved fee was $32,482.91. Mr. Jessop, an attorney hired to investigate Mr. Finch's alleged conflict of interest with the estate, had an approved fee of $16,097.50. If Mr. Flynn's request for $34,070.81 were approved, the total professional fees would total $82,651.22. The professional fees alone would exceed the value of the estate, leaving the creditors with nothing.